Eduardo M. PEREZ, Plaintiff–
Appellant,

v.

Michael J. SULLIVAN, Secretary,
et al., Defendant–Appellees.

No. 02–2245.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 21, 2002.

Before FAIRCHILD, EVANS, and
WILLIAMS, Circuit Judges.

ORDER

Eduardo M. Perez, an inmate of the
Wisconsin Department of Corrections
("DOC"), sued several DOC employees un-
der 42 U.S.C. § 1983 asserting that in
violation of the Eighth Amendment they
failed to provide him with proper treat-
ment for a back injury. The district court
granted summary judgment to the defen-
dants and Perez appeals. We affirm.

In 1997 Michael Sullivan, the then-secre-
tary of the DOC, contracted with several
counties in Texas to house Wisconsin in-
mates in their jails. Perez was selected
for transfer, and was moved to the Bowie
County Correctional Center. On July 26,
1997, Perez slipped and fell on the bath-
room floor after showering and injured his
back, hip, and knee. He was examined by
nurses the next evening at the jail's infir-
mary, where he was placed in a holding
cell for observation and given Tylenol # 3
for pain. On July 28 a doctor ordered x-
rays and an MRI of Perez's back, which
revealed that Perez had suffered a dislo-

---

* After an examination of the briefs and the
record, we have concluded that oral argu-
ment is unnecessary. Thus, the appeal is
submitted on the briefs and the record. *See*
Fed. R.App. P. 34(a)(2).

cated and herniated disc in his back and a pinched nerve. Perez was seen in the infirmary several additional times and received medication for his pain. In August Bowie County authorities scheduled an appointment for Perez to see a neurosurgeon; he was told, however, that the appointment had been postponed because the DOC had not authorized it.

Around this time the DOC determined that Perez should return to Wisconsin for medical treatment. His return was delayed, however, and the DOC authorized him to be seen by a neurosurgeon in Texas. On September 10, 1997, Perez was examined by Dr. Joel Patterson, who determined in a report that Perez suffered from a "sequestered free fragment" in his spine which was causing "serious nerve root compression." Patterson further opined that Perez "would definitely benefit" from surgery on his back, although there was a risk that he would not get better because he sustained "chronic nerve root damage." The DOC did not authorize the surgery, but instead returned Perez to Wisconsin on September 12. On September 15 he was examined by a DOC doctor and an appointment was made for him to be examined at the University of Wisconsin Neurosurgery Clinic. On October 22 Perez was examined by Dr. Gregory Trost, a neurologist at the University, who ordered another MRI to be taken of Perez's back. The MRI was performed on December 17, and Dr. Trost concluded that Perez suffered an "extremely small" disc herniation "without signs of nerve root impingement." He instead surmised that Perez's pain was caused by an "annular tear" which did not need to be corrected by surgery but which would improve with "continued conservative therapy for several months." Perez never did have surgery on his back.

Perez filed suit in late 1999 against Sullivan, Wendy DeMott, a registered nurse employed by the DOC, and Sharon Zunker, the former director of the DOC's Bureau of Health Services, alleging that they had exhibited deliberate indifference to his medical needs in violation of the Eighth Amendment by delaying his treatment in Texas and by denying him surgery on his back. The district court granted summary judgment to the defendants, concluding that he had failed to prove that the defendants acted with deliberate indifference when they delayed providing him with care while he was in Texas, and that he asserted nothing more than dissatisfaction with his medical care, which does not rise to the level of an Eighth Amendment violation. Perez appeals.

■ While Perez's brief is difficult to understand, he appears to first challenge the district court's conclusion that the defendants' delay in providing treatment to him did not violate the Eighth Amendment. The basis of his argument is not entirely clear, but he appears to assert that the defendants purposefully interfered with his medical treatment in Texas by delaying his appointment to see a neurologist. But as the district court correctly concluded, Perez provided no "verifying medical evidence" that this alleged delay in scheduling an appointment with a neurologist detrimentally affected his medical treatment. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996). He therefore failed to prove that the defendants violated his Eighth Amendment rights by delaying his treatment in Texas.

■ Perez also appears to argue that the district court incorrectly concluded that his Eighth Amendment rights were not violated when the DOC refused to authorize surgery on his back. The record contains two differing medical opinions, however, regarding Perez's condition and whether surgery was necessary. Dr. Pat-

terson concluded that Perez suffered nerve root impingement and "would definitely benefit" from surgery, but Dr. Trost believed that he suffered only an annular tear and that surgery was unnecessary because Perez would recover with continued conservative treatment. While Perez disagrees with the DOC's decision to accept Dr. Trost's recommendation, his dissatisfaction with the treatment he was provided does not rise to the level of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir.1996) ("medical decisions ... such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.").

AFFIRMED.